[Civ. No. 3038.   Fourth Dist.   Mar. 4, 1943.]

A. L. CHURCHILL, Respondent, v. E. A. PETERS, Appellant.

J. D. Willard and Richard V. Aten for Appellant.

Russell & Heid for Respondent.

GRIFFIN, J.—This is an appeal on the judgment roll alone. Therefore, no evidence introduced at the trial of the case is before this court for consideration. This is of particular significance in considering the three questions which appellant argues in his brief on appeal.

Plaintiff and respondent instituted this suit to obtain an accounting; to have the court adjudicate the question whether, by the evidence and a certain document attached to the complaint as an exhibit, a limited partnership had been created; to have it adjudged and determined what interest plaintiff, as well as about 70 named defendants, had in a certain oil and gas lease; to have a receiver appointed pending the determination of the litigation; to dissolve the limited copartnership if such should be found to exist; and for general relief. Defendant and appellant Peters, in due

course, filed an answer in which he denied many of the material allegations and admitted others. Other defendants also appeared and set forth the amount of their investments in the enterprise. After an extended trial the court made findings of fact and conclusions of law and ordered judgment against defendant and appellant Peters and in favor of the plaintiff and the other defendants.

The verified complaint, filed August 7, 1939, alleges generally that sometime prior to March 1, 1939, defendant and appellant Peters represented to plaintiff that he had a lease in an oil field in Los Angeles County and that he was about to form a limited partnership for the purpose of drilling an oil well, and would assign the lease to the partnership; that Peters represented that plaintiff could have a one per cent interest in the lease, well and partnership for $750; that plaintiff paid the $750 and received a certificate evidencing his interest; that purported articles of limited partnership of the "E. A. Peters Oil Company" were executed April 22, 1939, by plaintiff and defendants (other than defendant Peters and Peters Royalty Corporation) and that the plaintiff and the other investors were designated as limited partners and E. A. Peters as the general partner. The exhibit attached to the complaint and designated "Articles of Limited Partnership of the *E. A. Peters Oil Company*," recites that the undersigned desires to engage in the business of drilling for and producing oil, gas and other hydro-carbon substances; and that the principal place of business of the partnership shall be the county of Fresno. It sets forth as the property of the partnership an assignment of an oil and gas lease, executed on September 8, 1938, by defendant Iola S. Baass, as lessor, and defendants H. R. Eyer and Imogene Eyer, his wife, as lessees, which provides for a 16⅔ per cent royalty interest to defendant Iola S. Baass, the lessor and landowner, and an overriding royalty interest to be paid as follows: two-thirds of one per cent to defendant Imogene Eyer; two-thirds of one per cent to defendant Ora S. Stoner; 12 per cent to defendant Ora P. Burns. The purported partnership therefore owned 70 per cent of all of the oil and gas and other hydro-carbons to be produced on the real property. The purported articles then provided that E. A. Peters was to be a general partner and that the other named contributing defendants were to be limited partners. Their specific interests were designated by per cent, as representing the

amount of cash contributed by each limited partner. Under its terms the general partner was to receive all net profits *not allocated to the limited partners.* The percentages of net profit so allocated to them were to be percentages of the 70 per cent allowed the partnership for the development and production of oil and gas above stated. It also provided that upon the dissolution of the partnership all net profits of the partnership should be distributed to the general and limited partners as their respective interests may appear, and that such net profits were to be determined after deduction of all operation and development work expenses, and the sinking funds were to retire current liabilities and operating reserves from the gross receipts. The remainder thereof was to be designated as the net profit. Upon the dissolution of the partnership the limited partners were to participate in the distribution of the assets in the same percentage as they participated in the net profit. The general partner was entitled to draw a sum not to exceed $300 per month as an overseeing charge. After reciting the conditions of the agreement, the exhibit above mentioned which was attached to the complaint then contained the following notation: "(Signatures and acknowledgments of persons heretofore listed as limited partners omitted for brevity.)" The complaint further recites that a producing well was brought in on the property on April 5, 1939, and that the defendant Peters and *Peters Royalty Corporation,* which corporation drilled the well (under contract for $35,000), sold oil from the well in quantities unknown to the plaintiff, kept the proceeds, refused to account to the investors and threatened to continue such conduct; that Peters and *Peters Royalty Corporation* were insolvent; that creditors of the defendants whose claims arose out of the drilling operations, were threatening to place liens on the property; that Peters was mismanaging the well and that the well and the products thereof would be lost to the investors unless a receiver was appointed.

The verified answer of defendant and appellant Peters denied all charges of misconduct and mismanagement, and it specifically denied that Exhibit B, attached to plaintiff's complaint, was a "true or correct copy of the limited partnership agreement." It alleged that the earnings from oil sold were being used to pay the cost of drilling the well. Peters denied that the *Peters Royalty Corporation* had anything to do with the sale of the products of the well and alleged that

that corporation was in bankruptcy. The lack of a permit from the Commissioner of Corporations authorizing the sale of interests in the oil well was admitted, but it was alleged that a permit was not necessary. The various defendant investors filed answers setting forth their respective interests, some admitting the allegations of the complaint and others denying them for lack of information. Two groups of investors claimed that the purported partnership articles, set forth as an exhibit to the complaint, gave the E. A. Peters Oil Company a different percentage in the well than the articles which they signed, and claimed that Peters misrepresented the percentage to them. The lessor of the oil property, Iola S. Baass, answered and set up her claimed interest. Ora P. Burns, who claimed a 12 per cent royalty interest as given in the articles of limited partnership, also filed her answer.

The court then specifically found that Ora P. Burns did not sign Exhibit B but did invest $3,600 and was not entitled to her 12 per cent royalty interest but was entitled to share proportionately in the general property and assets. The trial court then found generally in accordance with the allegations of the complaint; that the plaintiff and defendants, other than E. A. Peters, *Peters Royalty Corporation*, Imogene Eyer, Ora S. Stoner, Ora P. Burns, and Iola S. Baass paid to Peters certain specified sums, and found the amount contributed and the fractional interest or share each had in the oil lease and property. It was further found that Peters executed and delivered to them a certificate or security (Exhibit A) evidencing the interest of the respective parties in the oil and gas lease, well and partnership.

The findings then recite that Peters thereafter prepared and purported to sign, as general partner, and plaintiff and the investor defendants referred to, purported to sign, as limited partners, an instrument designated "Original Articles to Certificate of Limited Partnership of the E. A. Peters Oil Company, a Limited Copartnership," attached to plaintiff's complaint and marked Exhibit B; that by said certificate the principal office and place of business of said purported limited copartnership was designated as Fresno County, and that the instrument was delivered to Peters for the purpose of filing in the office of the County Clerk of said county and in the office of the County Recorder of said county; that said certificate was not filed as required by section 2478 of the Civil Code in the clerk's office or in the recorder's office; that

said certificate was not sworn to by any of the signers thereof and that the laws of the state relating to the formation of limited copartnerships were not complied with and that *no limited copartnership was organized* by defendant Peters as a result of the proceedings or actions; that no *limited partnership, general partnership, association or joint venture was thus organized or created* but an involuntary trust, within the meaning of section 2224 of the Civil Code, resulted from said transactions. It then found that on the first day of October, 1938, Peters, acting on behalf of the investors in the enterprise, entered into a written contract with defendant *Peters Royalty Corporation,* of which said corporation Peters was president and manager and in sole charge of its business affairs, wherein and whereby *Peters Royalty Corporation* agreed (for the sum of $35,000) to drill and furnish the necessary equipment to place the well upon production, and that pursuant to the terms of the agreement, *Peters Royalty Corporation* did commence the drilling of a well upon the premises about November, 1938, and that the drilling was completed about April 5, 1939, and thereafter oil and gas were produced therefrom, which oil and gas were sold by Peters until the appointment of a receiver by the court, whereupon the receiver continued to operate the well and to sell the oil and gas produced therefrom; that part, only, of the monies so collected by Peters, was deposited in the bank account, carried in the name of E. A. Peters Oil Company, and that from time to time prior to the commencement of the suit, Peters rendered statements to the investors which were incomplete and did not conform to the facts; that Peters did not pay any profits or income from the sale of oil or gas to the investors; that when Peters commenced to sell certificates or purported interests in the purported limited partnership, he deposited some of the receipts in his personal bank account and made no entries in any books and kept no record thereof, and that thereafter, as collections were received from sales, defendant Peters deposited the monies in the bank account of *Peters Royalty Corporation,* as purported payment on account of the drilling contract of $35,000; that no entries in the books of either E. A. Peters Oil Company or Peters Royalty Corporation were made of these payments, nor was any permanent record kept thereof and because of such lack of records it was difficult for the court to determine the amount of money collected by Peters or the amount of money actually

paid by him to *Peters Royalty Corporation* on account of the drilling contract; that Peters created debts and obligations in connection with the drilling of the well, many of which debts and obligations were due from *Peters Royalty Corporation* and included in the contract price of $35,000; that prior to the commencement of this suit the *Peters Royalty Corporation* was adjudged bankrupt by the United States District Court and Peters was and is insolvent. It was then found that the certificates of interest sold in connection with the purported gas lease and partnership, under the circumstances, constituted a security within the meaning of the Corporate Securities Act, was in violation of law, and that a fraud was perpetrated upon the investors by Peters in the sale of such securities; that Peters fraudulently represented to plaintiff and defendant investors that the total royalties required to be paid from the oil and gas purchased from the well amounted to 18 per cent and that in many instances he obtained signatures to the purported certificate by representing that the same were to be used for purposes other than signatures on the certificate or limited partnership agreement; that all the monies hereinbefore found to have been paid or delivered to Peters by plaintiff and defendant investors was actually invested in the lease, well and property; that the monies which Peters collected from the investors, as found, was by Peters paid to *Peters Royalty Corporation,* to be applied on account of the drilling contract of $35,000, and that Peters collected from the investors and paid to said *Peters Royalty Corporation* the sum of $37,200, thus making an excess payment of $2,200, for which amount Peters was held to be liable and indebted to the investors; that in addition to the collections and payments Peters, out of receipts for oil and gas sold from the well, paid to *Peters Royalty Corporation,* the sum of $2,550 for which Peters was also held liable and which was held to be owing from Peters to the investors; that out of the production of oil and gas from the well the investors therein were entitled to receive 82 per cent thereof; that the total invested by all investors was $40,800; that Ora P. Burns paid Peters $3,600, for which sum Peters failed and refused to account, and that Peters is indebted to the investors in that sum; that during the time the well produced oil and gas under the management of Peters he collected on account of sales thereof $9,043.20, and that out of said sum he paid to the Natural Gasoline Company the sum of $422.64

upon an account for fuel furnished to *Peters Royalty Corporation* and used in drilling the well; that this indebtedness was an obligation of *Peters Royalty Corporation* solely, and that Peters wrongfully paid that sum out of the funds and property of the investors and that Peters is therefore indebted to the investors in that amount; that Peters, on behalf of Peters Royalty Corporation, entered into a contract with Natural Gasoline Company pursuant to which it furnished Peters Royalty Corporation fuel used in connection with the drilling of the well; that this contract provided that the cost of the fuel should be paid out of gas produced from the well; that the Natural Gasoline Company did furnish *Peters Royalty Corporation* fuel in the sum of $1,090.78, of which Peters paid out of gas produced from the property of the investors, the sum of $422.64, leaving a balance owing at the time of the appointment of a receiver, the sum of $668.14, which amount was a proper obligation of the Peters Royalty Corporation and which the investors had to pay through the receiver, and that Peters, on account thereof, became indebted to the investors in the sum of $668.14; that during the 4 months' period the operation of the well was under the management of Peters, he was entitled to be paid a reasonable compensation as an overseeing charge in the sum of $75 per month, or a total sum of $300; that Peters withdrew from the funds of the investors, as an overseeing charge for that period, the sum of $2,100, thereby withdrawing and paying himself $1,700 in excess of that to which he was entitled, in which amount Peters was held indebted to the investors; that during the course of drilling operations Peters, on behalf of himself and the Peters Royalty Corporation, entered into a conditional sales contract with J. D. Rush Company, whereby well casing and other equipment was purchased and used in the drilling and equipping of the well, which property was required to be furnished by Peters Royalty Corporation pursuant to the terms of the drilling contract; that neither *Peters Royalty Corporation* nor Peters paid for it; that J. D. Rush Company threatened to remove the personal property from the well and it became necessary for the investors, through the receiver, to pay the balance of the indebtedness due on account of the purchase, in the sum of $4,238.27, for which Peters was liable; that in addition to the payment of $4,238.27, Peters paid Rush Company, on account of purchase of personal property, out of the proceeds of oil produced from the

well, the property of the investors, the sum of $2,324.85, for which Peters was also held liable. The court then found that Peters was indebted to the plaintiff and investors in the total sum of $17,703.90; that the plaintiff instituted and prosecuted this action for the use and benefit of himself and the defendant investors, and that this action was not prosecuted by plaintiff in his own right nor for his own exclusive benefit; that plaintiff and defendant investors are jointly interested in the fund, properties, and assets obtained and preserved as a result of this action and that the plaintiff is entitled to an allowance for his expenses, including a reasonable counsel fee, fixed at the sum of $1,500, payable from the funds in the hands of the receiver. The court then found the respective interests of the plaintiff and respondent defendants in and to the proceeds of the lease and property above mentioned. Judgment was rendered accordingly. Defendant E. A. Peters, only, appealed on the judgment roll alone.

Appellant first argues that the findings are insufficient to support the judgment in this, that the complaint, which includes the purported limited partnership agreement, shows on its face that such a partnership was in fact formed. We see no merit to this argument in view of the fact that the appeal is on the judgment roll alone and the evidence on the subject is not before us for consideration. It is true a purported partial copy of Exhibit B was attached to plaintiff's complaint. Appellant's verified answer does not admit its due execution, but on the other hand, he denies that it is a "true and correct copy of the limited partnership agreement." The record of the trial court containing the original exhibit and the evidence on the subject was not brought up on this appeal. In view of the record before us, we therefore are compelled to hold that there was evidence supporting the finding of the court that no such limited partnership was "created or organized" under section 2478 of the Civil Code, and that no general partnership, association or joint adventure was thus organized or created, but an *involuntary* trust resulted from the transaction. (*Willett* v. *Schmeiser Mfg. Co.,* 82 Cal.App. 249 [255 P. 529].) Where there is no bill of exceptions or duly authenticated record affirmatively showing alleged error, an appellate court, on appeal on the judgment roll alone, must indulge in a presumption in favor of the regularity of findings and judgment, and if a trial court commits error, that error or facts necessary to establish it, must

be shown affirmatively by appellant, and where a finding is made on the subject matter it will be presumed that there was received into the record evidence sufficient to support it, and ▮ upon an appeal on the judgment roll alone only the ultimate facts found can be considered, not the probative facts which have no proper place in the findings, and it is only in those cases where it clearly appears that the ultimate fact found is based upon and adduced from findings of probative facts and it is plain that the latter do not justify nor support the ultimate fact found that findings of probative facts will control that of ultimate fact and so deprive the judgment of support. (*Whitney* v. *Redfern,* 41 Cal.App.2d 409 [106 P.2d 919].)

▮ The next contention is, assuming as true that the certificates of interest in and to the oil lease and contemplated limited partnership did constitute a security within the meaning of the Corporate Securities Act, and were consequently void, this fact was not sufficient in and of itself to constitute a fraud on the investors authorizing them to deprive appellant of his claimed interest in the lease or profits therefrom, citing *Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501 [86 P.2d 102].) The particular fraud mentioned is not the only fraud claimed and found to have been perpetrated by appellant. In addition to the failure of appellant to obtain a permit under the Corporate Securities Act, it was found that appellant fraudulently represented that the total royalties required to be paid from the oil and gas produced from the well amounted to 18 per cent; that in many instances he obtained signatures to the purported limited partnership agreement representing that the signatures were to be used for other purposes. Based upon these general findings of fraud, the court concluded that an involuntary trust was created within the meaning of section 2224 of the Civil Code. As appellant has not furnished any record supporting any claim of his to a purported share of the proceeds and assets of the involuntary trust, we find nothing in the decisions cited by appellant which would sustain his contention under the facts found, that those persons who were fraudulently induced to invest money in the oil well and property should not be held to be the equitable owners thereof. Section 2224, *supra,* provides that "one who gains a thing by fraud . . . the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee

of the thing gained, for the benefit of the person who would otherwise have had it." (See, also, *Heinrich* v. *Heinrich,* 2 Cal.App. 479 [84 P. 326].)

From the pleadings before us, based on the judgment roll alone, we are not able to hold as a matter of law that the trial court erroneously and without substantial evidence deprived appellant of any of his legal rights in and to the proceeds of the lease or trust. The argument that the money judgment entered against appellant is not supported by the findings is likewise untenable. The findings reflect that Peters collected large sums of money from the investors at the time he was president and manager and in sole charge of the business and affairs of the Peters Royalty Corporation. Acting on behalf of the oil enterprise and also acting on behalf of his corporation, Peters executed a contract whereby his corporation agreed to drill a well upon the leased premises and to furnish the necessary equipment to place the well upon production. For this work and materials the corporation was to be paid $35,000. Peters was a trustee for this oil enterprise and the investors therein. As such trustee it was his bounden duty to act in the highest good faith to his beneficiaries and not obtain any advantage therein over them by the slightest misrepresentation, concealment, or adverse pressure of any kind. He was not permitted to use or deal with the trust property for his own profit and was not permitted to undertake another trust adverse in its nature so as to acquire any interest or take any undue advantage adverse to the interest of his beneficiary without the knowledge or consent of the latter. (Civ. Code, secs. 2228 to 2233, inc.) Any violation of the foregoing duties constituted a fraud against the beneficiary. (Sec. 2234 Civ. Code; *Overell* v. *Overell,* 78 Cal.App. 251 [248 P. 310] ; *Vail* v. *Pacific Fish Products Co.,* 76 Cal.App. 58 [243 P. 869].)

The last contention to the effect that the court erred in allowing attorneys' fees out of the trust properties is not well taken. Appellant proceeds on the theory that he was the owner of a large interest in the property or trust and should not be compelled to pay out of his interest any part of the attorneys' fees. If Peters owned no interest in the lease or assets of the trust, as found by the court, the allowance of attorneys' fees could not very well affect him. Where the plaintiff instituted and prosecuted the action for the benefit

of himself and defendant investors and not for his own right or his own exclusive benefit, and where each was jointly interested in the fund, the property and assets obtained, and each was benefited as a result of the action, plaintiff was entitled to an allowance of his reasonable attorneys' fees. (*Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 475 [41 P. 328]; *Farmers etc. Nat. Bank* v. *Peterson,* 5 Cal.2d 601 [55 P.2d 867].) The allowance of the attorneys' fees to be paid from the trust fund, under the circumstances here related, is not unreasonable.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.