[Civ. Nos. 954 and 958.   Third Appellate District.—September 6, 1912.]

C. H. TUBBS, Appellant, v. ROSARIO DELILLO, Respondent (No. 954). C. T. TUBBS et al., Respondents, v. ROSARIO DELILLO, Appellant, and J. KRAMER et al., Intervenors (No. 958).

BUILDING CONTRACT—DEFAULT IN PAYMENT A PREVENTION OF PERFORMANCE—DISCONTINUANCE OF WORK JUSTIFIED—QUANTUM MERUIT—REASONABLE VALUE OF WORK DONE.—Where a building contract provided that if the owner of the property delayed any payment for more than five days after the same became due, such delay, at the contractor's option, was to be deemed a prevention by the owner of the performance of the contract, the refusal of the owner to make a payment due for such period placed the owner in default, and entitled the contractor to discontinue the work, and to recover upon a

*quantum meruit* the reasonable value of the work done, independently of the contract, including the reasonable value of extra work done at the owner's request.

ID.—UNCERTAINTY OF COMPLAINT IN DESCRIPTION OF CONTRACT—ERROR WITHOUT PREJUDICE—PROOF JUSTIFIED UNDER CROSS-COMPLAINT.— Where the complaint was uncertain in the description of the contract as to whether it was written or oral, any error in overruling a demurrer thereto for uncertainty was without prejudice, where the defendant's cross-complaint correctly described the written contract, and it was introduced in evidence, and justified the plaintiff's cause of action for breach thereof by the defendant.

ID.—PROVISION FOR ARBITRATION—DISREGARD BY DEFENDANT OF WRITTEN DEMAND.—Where the contract provided for arbitration of disputes, it is sufficient that the plaintiff made a written demand upon the defendant for arbitration thereunder, and that when repeated it was entirely ignored by the defendant. ·

ID.—ACTION BASED UPON RESCISSION OF CONTRACT—IMMATERIAL ALLEGATIONS.—The action being based upon a rescission of the contract and upon a *quantum meruit,* there was no necessity for any specific allegation by the contractor that the material furnished by him was actually used in the construction of the building or that the building had been completed. Such allegations would only be pertinent if a lien were claimed by the contractor, which is not this case, in which the contractor is not bound by the contract, nor limited thereby in his recovery.

ID.—CONSOLIDATION OF LIENS CLAIMED IN CONTRACTOR'S SUIT AGAINST OWNER—PARTIES.—Where actions to enforce liens were consolidated with the contractor's suit against the owner, the question whether the contractor was a necessary party defendant to the suit on such liens cannot be considered upon appeal, where it was not raised in the court below.

ID.—COMPLAINT IN INTERVENTION IN ACTION TO ENFORCE LIENS—NON-RELATION.—There is no good reason why a mechanic's lien should not be foreclosed by a complaint in intervention in another action brought under the mechanic's lien law. A suit to enforce a particular lien under said act is in effect a suit to enforce all the liens against the property. An intervention in a suit already pending, if filed within the six months allowed under said act, is as much a compliance therewith as an original suit, and has the same effect. In such a case there is no relation of the complaint in intervention to the date of the original action.

ID.—ADDITIONAL RELIEF ALLOWED TO CONTRACTOR LIMITED TO COMPLAINT.—It is held that the evidence shows that the contractor was entitled to a judgment in excess of the amount claimed in his complaint, but that the extent of relief must be limited to the sum alleged in his complaint.

APPEALS from judgments of the Superior Court of the City and County of San Francisco, in consolidated actions. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

W. C. Cavitt, for Rosario Delillo, Appellant and Respondent.

Chas. M. Bufford, for C. H. Tubbs, Appellant.

Dave Cosgrove, for C. T. Tubbs et al., Respondents.

BURNETT, J.—There are two appeals in this case, which, by stipulation, have been submitted on the same record, and they will receive consideration in one opinion.

There is a sharp controversy as to some of the facts, but the following are undisputed and are probably sufficient for a general understanding of the case: On the fourteenth day of March, 1908, C. H. Tubbs and Rosario Delillo entered into a contract in writing, whereby Tubbs agreed to furnish all the labor and material (including tools, implements and appliances) necessary for the construction on a lot of land owned by Delillo in a workmanlike manner of a three-story frame dwelling-house, and to complete the construction of the same on or before the eleventh day of July following, and Delillo promised to pay therefor the sum of $5,000 in seven installments as follows: (1) When the foundation was in, $350; (2) When the frame was up and the roof on, $1,000; (3) When the plumbing was roughed in, $500; (4) When the brown coat of mortar was on, $500; (5) When the white coat of mortar was on, $1,000; (6) When the building was completed, $450; (7) Thirty-five days after completion, $1,200. Under said contract each installment was payable on the contractor's written statement showing that the necessary amount of work had been done and materials furnished to entitle him thereto. It was also agreed that if Delillo delayed the making of any payment for more than five days after the same became due, such delay, at the contractor's option, was to be deemed a prevention by the owner of the performance of the contract. It was further provided that should the owner, at any time during the progress of the work, request

any alterations or deviations in, additions to, or omissions
from the contract or plans or specifications, the contractor
should be at liberty to make them, and the same should in
no way affect or make void the contract; but the amount
thereof should be added to, or deducted from, the amount of
the contract price, by a fair and reasonable valuation; and
any dispute "respecting the valuation of extra work, work
done or work omitted," should be referred to, and decided
by, arbitrators. The work was not· completed by the con-
tractor, and one of the main points of controversy is whether
his relinquishment of further operations on the building
should be charged to his default or to that of the owner,
and this question invites consideration at the outset. The
court found: "That commencing on the eighteenth day of
March, 1908, pursuant to said covenants, specifications and
unwritten understanding, plaintiff Tubbs did excavate de-
fendant's said lot and did furnish suitable labor and materials
and with them did proceed with the construction of said
building upon said lot in a good and workmanlike manner
and, except as the same were altered, as hereinafter set forth,
in all respects in accordance with said plans, drawings and
specifications, and on or before the twenty-eighth day of
May, 1908, had put in the foundation of said building, erected
the frame thereof, put on the roof, roughed in the plumbing,
and placed the brown and white coats of mortar thereon,
and on the eighth day of June, 1908, was still proceeding as
aforesaid with said work; that on the twenty-eighth day of
May, 1908, plaintiff Tubbs did personally deliver to defendant
a notice in writing, subscribed by him, and in words and
figures as follows:

" 'San Francisco, Cal., May 28, 1908.
" 'Mr. R. Delillo, San Francisco, Cal.

" 'Dear Sir:—I hereby notify you that the white coat of
plaster is now on your building at South Park, and that your
payment of $1,000 is now due. . . . '

"That at all times after the twenty-eighth day of May,
1908, plaintiff Tubbs was demanding of defendant the pay-
ment of the fifth installment of the contract price of their
said contract, but defendant wholly failed to pay any other
or greater sum than the sum of $138.85 hereinbefore set forth
and denied that he owed plaintiff Tubbs anything whatso-

ever on said contract, or for extras, or for deviations, or otherwise.''

It is not disputed that the owner refused to make any further payment to Tubbs, and it must be said that the record contains evidence to justify the refusal. In view of the decision of the lower court, however, we must, of course, look diligently to find support for the inferences favorable to the contractor's position. Following this course and without setting out the figures, we· reach the conclusion that at least a considerable portion of the said fifth installment, in addition to the said $138.85, was payable at the time the demand therefor was made. The owner's refusal to make any further payment, in the purview of the contract, placed him in default and entitled the contractor to recover the balance due for the work performed. It would make no difference that the contractor continued to work a few days longer than he was required, as this would be rather a favor to the owner.

As to this vital feature of the case, the dispute arises principally from the consideration of the claim of the contractor that he had furnished extras and made changes for which he was entitled to additional compensation. Herein is involved the inquiry whether he was authorized to do this extra work, and, if so, whether he actually performed it, and when he was to be paid and how much, if anything, was due therefor. As we have seen from the contract, the extra work was to be done on the request of the owner. It is found by the court that certain deviations from the plans and specifications and certain additional work were requested by the owner and the contractor followed the request. These are specified in the findings and the various items are assailed by the owner as unsupported. We deem it unnecessary to set out the evidence *seriatim* as to these various changes, but it is sufficient to say that the record does contain a substantial showing that all were done and made by the contractor on the request of the owner.

As to the compensation for these extras, the contract provided that a fair and reasonable valuation should be allowed, and the court determined that in the aggregate they were worth the sum of $577.20. There is a slight variance between the evidence for the contractor and the finding as to some of the items of these extras, but the contractor, in his

testimony, enumerated the various improvements, giving the value of each, which, according to his estimate, amounted to the sum of $643. As is apparent, this is in excess of the total sum allowed by the court, and the said inaccuracy as to some of the items is entirely without prejudice.

The contract did not provide when payment should be due for the extra work, but the contractor testified that "I stated to Mr. Delillo that it was customary generally to pay for extras when they were completed, and that all the extras would have to be paid for; that I had taken the job close and that I couldn't afford to give him any extras. He said all right, he understood that." Including, then, the value of the extras that were completed prior to said May 28th, there was ground, as already stated, for the demand by the contractor for an additional payment.

As to the provision in the contract in reference to arbitration, it may be said that a written demand in proper form was made by the contractor upon the owner for such arbitration, and it was afterward repeated, but it was entirely ignored by the latter.

Reaching the conclusion, therefore, that it is a fair inference from the record that the contractor was justified in withdrawing from further prosecution of the work, the inquiry arises: How much was he entitled to recover? The court found "that the value estimated by the standard of the contract price of plaintiff Tubbs' contract with defendant, of the work and materials bestowed by plaintiff Tubbs in constructing said building, before he ceased work as aforesaid, including the value of unused materials then on the ground, but exclusive of the value of deviations, alterations and extras done and furnished by plaintiff Tubbs as aforesaid, was the sum of $4,125"; that the reasonable value of removing certain old lumber from the premises by the contractor was the sum of $10, and that the value of said extras was the sum of $577.20. The contractor was charged with various payments made to him by the owner amounting to the sum of $2,988.85, with the payment by the owner to materialmen in the sum of $300 and to workmen of $112.35. The balance of the account as stated is $1,311, and the court found that the contractor was entitled to a personal judgment for this amount against the owner, subject, however, to a deduction there-

from of the whole amount of certain liens of other parties that were sustained by the judgment. It may be said that the integrity of this account finds support in the record. It is contended, however, by the contractor that the court should have allowed him compensation for the reasonable value of the work done by him, independent of the contract price. This would be, in accordance with one of the findings, the sum of $4,950, but as the court credited him with only $4,125 for the work, it would follow that the judgment in favor of the contractor should be increased by $825 and should be rendered for $2,136 instead of $1,311. This is in keeping with the rule laid down in *Adams* v. *Burbank*, 103 Cal. 646, [34 Pac. 640], and many other decisions of various jurisdictions. In the Adams case a landlord entered into a valid contract for the construction of a building upon his land, and, after the partial completion thereof, ousted the contractor and appropriated to his own use the materials already put upon the ground by said contractor. The court held that the contractor was entitled to treat the contract as rescinded, and to recover the reasonable value of the work performed and materials furnished at the request of the owner, and that he was not bound by the contract price agreed upon for the work and was not limited in his recovery to the payments due on the contract at the time he was prevented from completing it.

In *Porter* v. *Arrowhead Reservoir Co.*, 100 Cal. 500, [35 Pac. 146], a contract for the construction of a wagon road called for payment in monthly installments, and, upon the failure of the owner to pay an installment when due, the contractor stopped work and sued the owner on a *quantum meruit* for the value of the work already done. It was held that, in order to recover, it was necessary for the plaintiff only to show a substantial failure on the part of the owner to comply with the agreement, and in the opinion various cases cited in support of the position, among them being *Schwartz* v. *Saunders*, 46 Ill. 18, in which the owner failed to pay the contractor, in the erection of a building, an installment of the contract price, the supreme court of that state saying: "That he had a right to abandon the work under the circumstances seems a proposition so plain as to require no argument," and the court concludes that "A failure to

pay an installment of the contract price, as provided in the contract, is a substantial breach of the contract and gives the contractor the right to consider the contract at an end, cease work and recover the value of the work already performed.''

In *McConnell* v. *Corona City Water Co.*, 149 Cal. 60, [8 L. R. A., N. S., 1171, 85 Pac. 929], the contractor undertook to run and timber a tunnel, and the owner agreed to furnish all the timber needed for the purpose, but after a partial completion of the work the owner failed to furnish lumber for the balance, and, in discussing the situation of a contractor under such circumstances, the supreme court said: ''One who has been injured by a breach of contract has an election to pursue any of three remedies. He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or third, he may treat the repudiation as putting an end to the contract for all purposes of performance and sue for the benefits he would have realized if he had not been prevented from performing.''

As to the other points made by the owner, so far as deemed worthy of consideration, we are in accord with the views expressed by counsel for the contractor in their brief, and we may as well adopt substantially their method and reasoning. Whether right or wrong, the order overruling the demurrer to the complaint for uncertainty in that it was not averred whether the contract sued upon was written or oral was entirely without prejudice, for the reason that the contract was pleaded in the cross-complaint and was received in evidence without objection as the basis of the contractor's demand.

There was no specific allegation by the contractor that the material furnished by him was actually used in the construction of the building or that said building had been completed, but this is immaterial in view of the fact that no lien was allowed Tubbs. His complaint is manifestly sufficient on a *quantum meruit,* and authorized a personal judgment in his favor for the reasonable value of his services.

The point that Tubbs was a necessary party defendant to certain lien claimants' action consolidated with this cannot be considered, since it was not raised in the court below.

There seems no good reason why a mechanic's lien may not be foreclosed through the agency of a complaint in intervention. In *Mars* v. *McKay,* 14 Cal. 127, it was held that "a suit to enforce a particular lien under the mechanic's lien act is a proceeding to enforce all the liens against the property. And an intervention in a suit already pending, if filed within the six months, is as much a compliance with the act as an original suit." It was said by the court that the "intervenors having filed their intervention and become parties to the suit within the prescribed period of six months, and during the existence of their lien, the effect of their position is precisely the same as if they had commenced an original action."

The foregoing quotation from the Mars case suggests the answer to the owner's contention that the complaints in intervention relate to the date of the commencement of the original action, and since the original action was begun before the intervenors filed their notices, the complaints in intervention are affected by this infirmity and must be held to have been prematurely filed. The logic of this contention would virtually preclude intervention at all in such suits.

But, as stated in the Mars case, the position of the intervenors is the same as though they had brought a new action, and the situation must be viewed in the light of the facts existing at the time the complaint in intervention was filed. As stated by the contractor, the cases cited by the owner in reference to this point relate to an entirely different situation involving an amended or supplemental complaint. It is undoubtedly true that, where a complaint is filed and an action begun before the cause of action attempted to be stated has accrued, the plaintiff in that action cannot cure the defect by filing an amended complaint. The status must be determined as of the date of the beginning of the action. If, however, an amended complaint sets up an entirely different cause of action, to that extent it would be analogous to a complaint in intervention. This is illustrated by the case of *Anderson* v. *Mayers,* 50 Cal. 525, wherein it is held that "If a complaint on a judgment is amended so as to state a cause of action on a promissory note, the action on the note is not commenced until the amended complaint is filed, and the statute of limi-

tations on this note commences running at the time last mentioned.''

So in *Atkinson* v. *Amador etc. Canal Co.*, 53 Cal. 102, it was held that where the action was trespass and an amended complaint was filed for the purpose of including a parcel of land inadvertently omitted from the original complaint, the filing of the original complaint did not stop the statute of limitations from running against the trespass upon the omitted parcel. So likewise a complaint in intervention sets up a new cause of action, and admittedly also in favor of a third party, and the doctrine of relation does not apply. To determine, therefore, whether the action has been brought prematurely, or whether the statute of limitations has run against it, we must look to the date of the filing of the complaint in intervention and not of the filing of the original complaint. As we view the whole case, therefore, the evidence supports the findings and they in turn authorize the judgment with the additional award of $825 to the contractor. According to the allegations of his complaint he was entitled to the sum of $1,888.95 only. As it was not amended in that respect the relief accorded to him should not exceed that amount.

The judgment is modified by increasing the amount of the personal judgment in favor of the contractor Tubbs to $1,888.95, and it is affirmed in other respects, appellant to pay the costs in case No. 958; each party to pay his own costs in case No. 954.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 4, 1912.