[Civ. No. 3013. Third Appellate District.—July 15, 1927.]

N. H. LOCKE, Respondent, v. A. E. J. DUCHESNAY et al., Defendants; CHARLES E. SILVA, Appellant.

Driver, Driver & Tade, Driver & Driver and B. F. Driver for Appellant.

Parkinson & Parkinson for Respondent.

PLUMMER, J.—Plaintiff had judgment in an action to recover for work and labor performed, etc., in plowing, grading, and leveling a certain tract of land situate in the county of San Joaquin, and the defendant Silva appeals.

The appellant assigns five specific errors, as reasons for reversal of the judgment herein, to wit: 1. Error of the trial court in allowing amendments to pleadings to conform to the proofs; 2. Errors of the trial court in admitting evidence; 3. Error in denying appellant's motion for a nonsuit; 4. That the findings of fact and conclusions of law are not supported by the evidence; 5. That the judgment of the court is not justified by the pleadings, by the findings of facts, or conclusions of law.

Before referring to the alleged errors of the court, reference may properly be had to section 4½ of article VI of the constitution, wherein it is provided that "no judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

By this section, unless the alleged errors of the court relating to the pleadings and the admission of evidence, or refusal to strike out evidence, have led to a miscarriage of justice, then even though it be admitted that the points made by appellant are technically correct, a case has not been made out for the reversal of the judgment. It may be stated that a careful review of the evidence and a thorough reading of the amendments allowed to the pleadings by the court fail to reveal any grounds upon which we could predicate a conclusion that there has been a miscarriage of justice.

We will first consider the alleged error of the court in permitting amendments to the pleadings to conform to the proof.

The original complaint setting forth the cause of action charged the defendants as copartners, liable for the payment of certain work done and performed by one A. W. Curtis, in plowing, grading, subsoiling, and leveling on a

certain 200-acre tract situate in San Joaquin County. The complaint charges the reasonable value of the work to be the sum of $3,051; that the work was done during the year 1923; that it was to be paid for as follows: $1,000 on the first day of July, 1923, and the balance thereof on the first day of August, 1923; that there has been paid on account of the said work and labor performed the sum of $1,557.42 and no more, leaving a balance thereon due and payable in the sum of $1,493.58. The complaint then contains allegations showing assignment of said cause of action to the plaintiff herein.

The second cause of action is set forth against the same defendants to recover the sum of $346, the value of board, etc., furnished men and teams pursuant to an agreement with the said A. W. Curtis. This cause of action was likewise transferred to the plaintiff.

The defendants Duchesnay defaulted. At the conclusion of the trial the court awarded judgment in favor of the plaintiff as against the appellant Silva in the sum of $1,559.58 and costs.

The specific amendment complained of by the appellant is designated in the transcript as the one setting forth a tenth and separate cause of action alleging the employment of the said A. W. Curtis to perform the labor, work, etc., herein referred to by the defendant Charles F. Silva. This count or cause of action was based upon the alleged reasonable value of the work. The court permitted this amendment to the pleadings to be made, but directed further that it also be amended so as to set forth a cause of action upon an express contract for the payment of the sum of money herein referred to, for the work and labor to be performed, wherein it was alleged that the defendant promised to pay the said A. W. Curtis for plowing, grading, subsoiling, and work on said farm, as follows, to wit: $2 per hour for each hour upon which each tractor should be operated by said Curtis in said work, and at the rate of $9 per day for each day that each team should be employed by said Curtis upon said work; that pursuant to said agreement said A. W. Curtis operated tractors upon said premises for a total of 972 hours and operated teams on said premises for a total of 123 days, aggregating the total value of the work as agreed upon, in the sum of $3,041, on which

amount there had been paid the sum of $1,557.42 and the further sum of $270.

The court found, among other things, that the said Charles F. Silva and the defendants A. E. J. Duchesnay and Loulou Duchesnay were not copartners and were not engaged as joint adventurers, but did find that the defendant Charles F. Silva was engaged in the operation, development, and improvement of a certain tract of land near Dry Creek, in the county of San Joaquin, and that he entered into an agreement with A. W. Curtis to perform work and labor thereon, consisting of plowing, grading, subsoiling, etc., and that the work was to be paid for as set forth in the amendment to the complaint.

The transcript shows the following facts: That prior to any negotiations with the said A. W. Curtis by either A. E. J. Duchesnay or Charles F. Silva, the defendant Charles R. Silva was the owner of 200 acres of land situate near Dry Creek, in the county of San Joaquin; that he was desirous of having his land improved; that on the twenty-second day of March, 1923, the said Silva and A. E. J. Duchesnay, as parties of the first part, entered into a contract with one John Strieff, as party of the second part, to improve said 200 acres by plowing, scraping, leveling, etc., said lands and premises to be paid for as follows: Tractor, including scraper and driver, $2 per hour; four-horse team and driver, $9 per day; two-horse team and driver, $6.50 per day.

The record further shows that John Strieff "fell down" on his contract and did not attempt to perform the work therein covenanted by him to be done and performed upon the 200 acres of land belonging to the said Silva; that at the beginning of the negotiations with the said Curtis for the performance by him of work upon the premises, a conversation was had between the said Curtis and the defendant A. E. J. Duchesnay, during which conversation the said Curtis showed the original of the contract that had been entered into between the said Strieff and the defendant Silva and A. E. J. Duchesnay for the plowing, scraping, and leveling work to be done upon the premises referred to. Thereafter the said Curtis and the said A. E. J. Duchesnay went to Sacramento and had a conversation with the defendant Silva. In this conversation the Strieff

contract was referred to and in this conversation and subsequent conversations the manner of financing the improvement about to be made was mentioned, in which conversation the defendant Silva stated that he would assist in the financing by securing money through mortgages on the premises. Before this had occurred, however, the following transaction had taken place: The defendant Charles F. Silva had executed a deed of conveyance purporting to transfer the 200 acres of land referred to to the defendant Loulou Duchesnay, the wife of the defendant A. E. J. Duchesnay, and while the lands were estimated by the said Silva, according to his own testimony, to be of the value of $40,000, the said Loulou Duchesnay did not pay any sum of money to the said Silva for and on account of the conveyance to her. She did, however, execute in favor of the said Silva a mortgage in the sum of $10,000, and assumed a further indebtedness of $12,000, evidenced by a mortgage upon the lands and premises in favor of some bank in San Jose.

The testimony of Silva and Duchesnay, taken together, shows the following in relation to the property: First mortgage $12,000, lien of reclamation taxes about $9,000, second mortgage in favor of Silva $10,000, improvements to be placed on the premises $10,000, total value represented by mortgages and improvements, $41,000; estimated selling price $60,000; Silva's share $10,000; by payment of his mortgage share of A. E. J. Duchesnay $9,000.

The testimony of A. E. J. Duchesnay shows that he was a real estate agent, endeavoring to sell the property. The testimony of Curtis is to the effect that the defendant Silva stated in some of the conversations had, when he and Silva and A. E. J. Duchesnay were having conversations relative to the work that he, Silva and Duchesnay were "together in the land." The testimony of Silva is further to the effect that while the arrangement was made with the Strieff Brothers, the contract entered into with John Strieff was actually signed after the ranch had been transferred by him to the defendant Loulou Duchesnay. The testimony of the defendant Silva is that he sold the ranch to Loulou Duchesnay, but the contract with Strieff relative to the improvement of land, the showing of the contract to Curtis after the Strieff Brothers, to use the language of the wit-

ness, "fell down on the contract," and the willingness of Curtis to take up the work on the same terms, and the statement of Silva that he was willing to assist in financing the improvement, by borrowing the money, were all matters before the court for the court to determine and decide whether there had been, in fact, any actual sale of the premises, or whether Silva was still an owner therein and liable for the improvements made upon the premises, even though the defendant A. E. J. Duchesnay made the agreement, or the principal part of the agreement, with Curtis, for the work and looked after the execution thereof and supervised it during the time the improvements were being carried forward. The fact that Loulou Duchesnay, not shown to have any financial resources whatever, was the nominal purchaser of a 200-acre ranch without paying a cent therefor was another circumstance for the trial court to consider in ascertaining who was liable for the payment of the improvements made thereon.

We think the testimony in this case clearly shows a joint adventure. It would require many pages to set it all forth, but we have stated the substance of what it shows. There were many conversations relative to the raising of money, and just how the $1,557.42 paid on account of the work was raised does not clearly appear from the transcript, but the inference is that it was raised by mortgages given to, or money borrowed from, a real estate firm in the city of Stockton. The court, however, found that there was no joint adventure and permitted an amendment to the pleadings charging the defendant Silva liable as principal. Does this show a miscarriage of justice, so far as the defendant Silva is concerned? We think not. What we have said shows that he was liable as a joint adventurer, which made him liable for the payment to A. W. Curtis of the value of the improvement, or of the amount agreed to be paid therefor, and, so long as he was liable in the capacity of a joint adventurer with the Duchesnays in the improvement of the land, for the purpose of sale, he suffered no imposition on the part of the court when he was charged in the complaint as an individual, for the simple reason that he was individually liable in either case. The court, apparently, viewed the testimony as showing more clearly that A. E. J. Duchesnay was simply acting as

agent for the defendant Silva in making the improvement of the premises for the purpose of selling and that the transfer of the paper title from Silva to Loulou Duchesnay was simply in furtherance of the plan to improve and sell, Silva's possible profits being represented by the $10,000 mortgage executed to him by the said Loulou Duchesnay and the profits of the defendant A. E. J. Duchesnay whatever he would realize upon the sale of the premises, over and above the liens to which we have referred.

The amendments to the complaint to which we have referred were filed prior to the time of the order of the court permitting the same, but, as appears from what we have stated, it is evident that the appellant suffered no damage by reason thereof.

The testimony of the appellant to the effect that he had no interest in the lands and premises being improved after making the transfer thereof to Loulou Duchesnay, the wife of the defendant A. E. J. Duchesnay, without any consideration being given or paid therefor, except as to the promises herein referred to, does not affect anything we have said in relation to the amendments to the pleadings, because the credibility of witnesses' testimony and the effect to be given to his denials are matters purely for the consideration of the trial court. From the findings of the trial court it is evident that the court rejected the appellant's testimony, and if we accept the appellant's denials for their face value, a conflict of evidence only would be presented.

The appellant's objection as to the variance in the testimony is completely answered by the rule found in 5 Corpus Juris, pages 1386 to 1388, and quoted with approval in *Willett & Burr* v. *Alpert,* 181 Cal. 652 [185 Pac. 976], at page 659. The rule there set forth is, in substance and effect, that when the contract has been fully performed and nothing remains to be done under it but the payment of money by the defendant, the plaintiff may, at his election, declare specially upon the contract or generally *indebitatus assumpsit.* Under such circumstances there is no fatal variance between the allegations and the proofs and an amendment to conform the pleadings to the proofs is proper. Had the court concluded that the true relation of the parties was that of a joint adventure under the allegations of the complaint, judgment might have been awarded against the

appellant. (*Vail* v. *Pacific Fish Products Co.,* 76 Cal. App. 58 [243 Pac. 869, at p. 875].)

From what we have heretofore said, based upon what took place between Curtis, A. E. J. Duchesnay, and the appellant Silva, it is evident that the appellant's motion for a nonsuit was properly denied.

As to the objection that the court erred in the admission of testimony, our attention is called to the transcript where the witness A. W. Curtis was permitted, in testifying to the work and labor performed, to refresh his recollection by examining certain time-books, wherein was kept an account of the time put in by the different workmen engaged in the improvements referred to, the objection to the testimony being based on the ground that the record was not all kept by the witnesses. We do not need to examine into the correctness of the objections, or determine whether it was or was not well based, from the simple fact that thereafter the defendant A. E. J. Duchesnay testified to the time based upon his own records, which was identical with the time-books used by the witness Curtis in refreshing his memory. No attempt whatever was made to question the accuracy of the time as kept by the defendant Duchesnay. This testimony stands absolutely uncontradicted. The ruling of the court, if admitted to be error, in allowing the witness Curtis to refresh his memory from the time-books or time-sheets was without any prejudice or injury to the appellant and brings the objection squarely within the provisions of section 4½ of article VI of the constitution.

Appellant's objection that there was no testimony showing the number of hours constituting a day's work is not borne out by the record. The transcript contains testimony to the effect that nine hours constituted a day's work.

It is finally urged by the appellant that the amount of the judgment should be reduced in the sum of $250 on account of a certain note executed by A. E. J. Duchesnay and the appellant, and delivered to A. W. Curtis, which enabled the said Curtis to raise the sum of $250, by discounting the note, and that said sum constituted a partial payment for the work and labor performed. The uncontradicted testimony both of Curtis and of the defendant A. E. J. Duchesnay is to the effect that Curtis was in need of said sum of money and was pressing for the payment of

the amount due him and that in order to raise some money the appellant and the said defendant Duchesnay executed said note and delivered the same to the said Curtis and thus enabled him to realize the said sum of $250. The testimony further shows that this note is still in the possession of the bank, to which it had been delivered, and is outstanding in the full sum of $250 and the interest thereon. The testimony of Curtis is further to the effect that the payments set forth on account of the work and labor performed and the credits given in the complaint do not include the said sum of $250, and while the testimony of Curtis is to the effect that the receipt of the note by him executed as herein stated and the obtaining of the money therefor by discounting the same at a bank at Galt was only to enable him to obtain that sum, on account of the work and labor performed by him, it is evident that the obtaining of money due him by means of the use of the credit of appellant and the defendant A. E. J. Duchesnay did amount to and constituted a payment of that sum of money, as the defendant A. E. J. Duchesnay testified: ''I told Silva that we had to get some money for Curtis; I told him that I had taken the matter up with Curtis and he thought it would be best to finance through his bank at Galt for that note; that the note was given to Curtis so he could discount it at the bank at Galt.'' The witness further testified: ''Q. Was that note delivered to Mr. Curtis by you? A. Yes, sir. Q. Was that a payment on the contract for doing work on the ranch? A. Well, it was not a payment. It was more of some assistance in financing Mr. Curtis' work. Q. Your name is on that note; you have not been sued for it; your bank still holds it? A. Yes, sir. Q. Was not that a payment on this job? A. If it had been paid, yes, sir, but it has not been paid.''

This testimony shows that Curtis had the benefit of the $250; that it was a method of financing the work so that Curtis could obtain that sum of money. The fact that the note is still held by the bank does not render it any less a payment of that sum of money to Curtis, because he obtained the benefit of that sum of money. The legal conclusion of the witness that it was not a payment, because the note was still held by the bank and he and Silva were liable on it, does not affect the legal conclusion that should have been drawn from the transaction that Curtis had re-

ceived the sum of $250 and, therefore, the additional credit in that sum should be given on account of the contract. Otherwise, the judgment would be for $250 more than Curtis was entitled to, the defendants still owing the note upon which Curtis had received such sum of money. In other words, Curtis is not entitled to collect $250, by discounting the note given to him by the defendants and then again collect another $250 on the judgment, which takes no notice of this part of the method of financing the work. Whatever may be the final result in relation to said $250 note, it does appear that in the present action, based upon the work and labor performed, that Curtis has received the sum of $250, for which credit has not been given in this action and that the judgment against the appellant is greater than it should be in just that sum.

The note to which we have referred in the foregoing was dated May 23, 1923, payable on July 15th of that year for the sum of $250, bearing interest at the rate of seven per cent per annum until paid, and signed by the defendants A. E. J. Duchesnay and Charles F. Silva, and thereafter delivered by the defendant Duchesnay to the said Curtis. In the offering of this note in evidence counsel for plaintiff made the following statement: "We offer this note in evidence as showing payment on account, and that there was more than that amount due with these various small deductions taken out." The latter portion of the sentence, of course, has no bearing upon the present subject under consideration. It does show, however, that the note was offered in evidence as showing part payment on the account for work and labor performed by Curtis, as alleged by him upon the contract theretofore entered into between Curtis and the defendants A. E. J. Duchesnay and Charles F. Silva for the performance of the work herein referred to.

But whether the note was or was not executed and delivered as a part of the method of financing the work referred to in this action, and to enable Curtis to obtain $250 by assigning the same to a bank at Galt, was such as to constitute payment on the account; by the assignment of the note to the bank by Curtis, that much of his claim against the defendants. A. E. J. Duchesnay and Charles F. Silva was transferred to the bank. Thereafter his assignment to the plaintiff in this action transferred to the plain-

tiff only what remained of the account subject to transfer, after deducting the previous assignment, representing $250 worth of the work performed by the said Curtis. In other words, the plaintiff in this action is entitled to recover under his assignment only that portion of the account subject to assignment by Curtis at the date of the assignment. At this date the account shown, by what we have hereinbefore stated, was less in the sum of $250 than that allowed by the trial court.

It is finally urged on the part of appellant that the default against the defendants A. E. J. Duchesnay and Loulou Duchesnay is erroneous. As the Duchesnays are not appellants and are making no complaint, this contention, if true, is not before us for consideration. The whole record in this case shows that the deflation in the selling price of real estate, which occurred during the time the appellant and the other defendants were engaged in making the improvements on the lands and premises referred to, in order to put the same upon the market, caused the method of financing adopted by the parties to miscarry, and, therefore, led to this litigation.

It follows from what has been said that the judgment of the trial court should be and the same is modified by striking therefrom the sum of $250, and as so modified the judgment will stand affirmed; the appellant is allowed his costs on appeal.

Glenn, J., *pro tem.*, and Finch, P. J., concurred.