[Civ. No. 6769. First Appellate District, Division One.—June 20, 1929.]

JOHN L. SILVEY et al., Appellants, v. PAUL MARTIN FINK et al., Respondents.

James M. Thomas for Appellants.

Philip C. Boardman, Louis P. Dunkley and John R. Tyrrell for Respondents.

THE COURT.—An action to recover the sum of $5,000 from persons acting as the board of directors of Supreme Paint, Varnish and Enamel Co., a domestic corporation, the powers of which were suspended under the provisions of section 3669c of the Political Code.

Plaintiffs alleged that this amount was loaned by them to the corporation and was evidenced by a promissory note dated December 1, 1923, purporting to have been executed on its behalf; and that at the time of the transaction the powers of the corporation, unknown to plaintiffs, had been suspended for nonpayment of its license taxes for the year 1923. The defendants by their answer averred that the above amount was paid as a subscription for shares of the capital stock of the company after its powers were suspended, as alleged in the complaint, but pursuant to authority to sell the stock granted by the commissioner of corporations, and that the note was executed merely as an accommodation and without consideration, and that plaintiffs received for the above amount and retained 500 shares of the preferred and 125 shares of the common stock of the company, and in addition the sum of $750 paid as a commission on the amount of their subscription.

The court found in accordance with the averments of the answer and entered judgment for the defendants.

It appears without dispute that the powers of the corporation were suspended at the time of the transaction, and it is admitted by the pleadings that plaintiffs were without knowledge of the fact. This suspension took place on the first Monday in March, 1923, and, so far as shown, the powers of the company have never been revived. Theretofore, on November 15, 1922, the corporation had obtained from the corporation commissioner a permit to sell certain of its capital stock, consisting of preferred and common stock, and on May 10, 1923, an amended order was issued, authorizing it to sell 10,000 shares of its preferred stock and 2,500 shares of common stock in units of one share of preferred and one-fourth share of common for the price of $10 per unit, subject to a selling expense of not to exceed two dollars per unit. The permit provided that unless subscriptions for 1250 shares of its preferred stock should have been obtained, and $12,500 in cash paid thereon, such sums to be deposited with a depositary named by the commissioner, on

or before January 1, 1924, such subscriptions might be rescinded by the subscribers. It is admitted that subscriptions for that amount were received, the proceeds deposited in escrow as directed by the permit, and that they have since been withdrawn by respondents.

The court found that plaintiffs on August 17, 1923, subscribed for certain of the shares, and on December 1, 1923, the date of the note, subscribed for and purchased 500 additional shares of the preferred and 125 shares of the common stock, for which they paid $5,000, and that this sum was deposited as provided by the permit, and subsequently withdrawn by respondents, and that at the time of the last subscription it was agreed that plaintiffs should receive, through A. Murray, the agent of the corporation, the commission payable for the sale of the stock, to wit: Fifteen per cent of the subscription price, which amount, after the fund was received from the depositary, was paid to plaintiffs. It was also found that plaintiffs, at the time of making their subscription, stated that if they invested the above sum in the stock of the corporation they might be in need of money, and requested that the note of the company be executed to them, that they might, in that event, negotiate the same; and that defendants, acting as the board of directors of the company, thereupon caused the note in question to be executed, it being agreed that should the same be negotiated by the plaintiffs the latter would pledge to the company as security for its payment 500 shares of preferred and 125 shares of its common stock, but that the instrument was not negotiated.

While the evidence thereon was conflicting, the findings last mentioned were sufficiently supported and cannot be disturbed.

Subdivision 2 of section 3669c of the Political Code at the time of this stock transaction provided that "after 6 o'clock P. M. of the Saturday preceding the first Monday in March in any year the corporate rights, privileges and powers of every domestic corporation which has failed to pay said tax and money penalty shall, from and after said hour of said day, be suspended and incapable of being exercised for any purpose or in any manner except to defend any action brought in any court against such corporation until said tax and all accrued penalties and all taxes and charges due the

state under the Corporation License Act are paid, etc. . . . ''
The section further provided that until such taxes, penalties
and charges should be paid, every person who attempts or
purports to exercise any of the rights, privileges or powers
of any delinquent corporation should be guilty of a misde-
meanor, and every contract made in violation of the section
be void.

Under the above section the corporation and its
directors, as such, were without power during the period of
suspension to borrow money or execute the corporation's
note therefor, as plaintiffs claim was done, or to enter into
contracts of subscription for, or to sell its stock (*Van Lan-
dingham* v. *United Tuna Packers,* 189 Cal. 353 [208 Pac.
973]), and no authority to do the acts forbidden by the
statute could be conferred by the corporation commissioner.

It is admitted that the note was void; nor can it be con-
tended that the subscription agreements were valid contracts
of the corporation, or that the subscribers thereby became
owners of the stock which the certificates issued purported
to represent (Pol. Code, sec. 3669c, subd. 2; *Finch* v. *Finch,*
68 Cal. App. 72, 81 [228 Pac. 553]). In either case there
was a failure of consideration for the amount paid by plain-
tiffs; and unless they are estopped from making the claim,
or the asserted illegality of the transaction forbids relief,
that amount, less the sum which they had received, should
be refunded (*Smith* v. *Bach,* 183 Cal. 259, 263 [191 Pac.
14]).

The plaintiffs having previously subscribed for stock
in the company and received certificates purporting to rep-
resent the same, it is urged that they were stockholders and
familiar with the terms of the permit, and that, having paid
their subscription and received the certificates, they are
estopped from demanding a return of the amount paid; fur-
thermore, that they were parties to a contract declared ille-
gal by the section quoted, and by the agreement for the
refund of part of their subscriptions, were parties to a trans-
action which was a fraud upon other subscribers and the
creditors of the company (citing *Quartz Glass etc. Co.* v.
*Joyce,* 27 Cal. App. 523 [150 Pac. 648]), and should be de-
nied relief.

We find no merit in either of these contentions as plain-
tiffs in making the subscriptions were ignorant of the fact

which rendered void the subscription contracts and the certificates issued in both transactions, namely, the suspension of the corporate powers. Their ignorance in this respect also disposes of the claim that by attempting to make a contract forbidden by the section they were *in pari delicto* with the trustees. No contract between the corporation and the plaintiffs having been created, that the parties to the transaction intended that plaintiffs should subscribe for stock on more favorable terms than others is immaterial. An intention to violate the law will not prevent a recovery where such is not the effect of the transaction (*Cannon* v. *Cannon*, 26 N. J. Eq. 316; *Neel* v. *Commissioners, etc.*, 94 Ga. 216 [21 S. E. 516, 517]; *Sutton* v. *Workmeister*, 164 Ill. App. 105, 109; 13 Cor. Jur., Contracts, sec. 341, pp. 411, 412).

 That part of the amount subscribed was refunded pursuant to an agreement to which, for the reason stated, the corporation was not a party, would not prevent a recovery as this sum was but part of that to which plaintiffs were entitled, there being as to them a complete failure of consideration.

 The court found that the corporation since the above transaction had incurred considerable indebtedness; and it is contended by respondents that it would be inequitable to permit a recovery under such circumstances. Its powers having been suspended, the corporation could incur no valid contractual obligations (*Van Landingham* v. *United Tuna Packers, supra; Ransome-Crummey Co.* v. *Superior Court*, 188 Cal. 393 [205 Pac. 446]); and if in ignorance of the suspension—which it was the duty of respondents to prevent —debts have been incurred by them, · this furnishes no ground for denying relief to plaintiffs.

 It appears that the certificates issued to plaintiffs had not been restored and that they also retained the amount paid to them by respondents. The certificates being void and without value, their return was unnecessary (Civ. Code, 1691, subd. 2; *Martin* v. *Lawrence*, 156 Cal. 191 [103 Pac. 913]), and plaintiffs were entitled in any event to the moneys received by them (*Kales* v. *Houghton*, 190 Cal. 294 [212 Pac. 21]).

 The original complaint was filed against the corporation alone. Subsequently plaintiffs discovered that the

powers of the corporation had been suspended and filed an amended complaint against those acting as its directors. Respondents claim that the amendment introduced a different cause of action and was improperly allowed. This contention may be disposed of by pointing out that no objection to the sufficiency of the complaint to state a cause of action against respondents, who answered the same, was made, and the trial proceeded on the theory that the action was one to recover from respondents amounts received by them which equitably they should restore. It appeared that there was a total failure of consideration for the money paid by the plaintiffs. Respondents should refund this amount less that already paid; and it being further shown that there were no circumstances which equitably forbid restitution, the trial resulted in a miscarriage of justice, and the judgment is accordingly reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1929.