[L. A. No. 23132.   In Bank.   July 30, 1954.]

JOHN QLIVER, Appellant, v. IVA LEE CAMPBELL, as
Special Administratrix, etc., Respondent.

William H. Neblett and Brett Smithers for Appellant.

Clyde C. Shoemaker and Byron O. Smith for Respondent.

CARTER, J.—Plaintiff appeals from a judgment for defendant, administratrix of the estate of Roy Campbell, deceased, in an action for attorney's fees.

Plaintiff's cause of action was stated in a common count alleging that Roy Campbell became indebted to him in the sum of $10,000, the reasonable value of services rendered as attorney for Campbell; that no part had been paid except $450. Campbell died after the services were rendered by plaintiff. Plaintiff filed a claim against his estate for the fees which defendant rejected. Defendant in her answer denied the allegations made and as a "further" defense alleged that plaintiff and Campbell entered into an "express written contract" employing plaintiff as attorney for a stated fee of $750, and all work alleged to have been performed by plaintiff was performed under that contract.

According to the findings of the trial court the claim against the estate was founded on the alleged reasonable value of legal services rendered by plaintiff for Campbell in an action for separate maintenance by defendant, Campbell's wife, against Campbell and in which the latter cross-complained for a divorce. Plaintiff was not counsel when the pleadings in that action were filed. He came into the case on December 16, 1949, before trial of the action. He and Campbell entered into a written contract on that date for plaintiff's representation of Campbell in the action, the contract stating that plaintiff agrees to represent Campbell in the separate maintenance and divorce action which has been set for trial in the superior court for a "total fee" of $750 plus court costs and other incidentals in the sum of $100 making a total of $850. The fees were to be paid after trial. Plaintiff represented Campbell at the trial consuming 29 days and lasting until May, 1950. (Defendant's complaint for

separate maintenance was changed to one for divorce.) After the trial ended the court indicated its intention to give Mrs. Campbell a divorce. But while her proposed findings were under consideration by plaintiff and the court, defendant Campbell substituted himself instead of plaintiff and thereby the representation by plaintiff of Campbell was "terminated." The findings in the divorce action were filed in May, 1951. Plaintiff's services were furnished pursuant to the contract. The reasonable value of the services was $5,000. Campbell paid $450 to plaintiff and the $100 costs.

The court concluded that plaintiff should take nothing because neither his claim against the estate nor his action was on the contract but were in *quantum meruit* and no recovery could be had for the reasonable value of the services because the compensation for those services was covered by the express contract.

According to plaintiff's undisputed testimony Campbell told him after defendant had offered proposed findings in the divorce action that he was dissatisfied with plaintiff as his counsel and would discharge him and asked him if he would sign a substitution of attorneys under which Campbell would represent himself. Plaintiff replied that he recognized Campbell had a right to discharge him but that he was prepared to carry the case to conclusion; that he expected to be paid the reasonable value of his services which would be as much as defendant's counsel in the divorce action received, $9,000, to which Campbell replied he was not going to pay "a cent more." (At that time Campbell had paid $450.) Thereupon the substitution (dated January 25, 1951) was signed and Campbell took plaintiff's file in the divorce case with him.

It seems that the contract of employment contemplated that plaintiff was to continue his services and representation at least until and including final judgment in the divorce action. (See *Neblett* v. *Getty*, 20 Cal.App.2d 65 [66 P.2d 473].) It might thus appear that plaintiff was discharged before he had fully completed his services under the contract and the discharge prevented him from completing his performance. (That question is later discussed.)

One alleged rule of law applied by the trial court and that urged by defendant is that where there is a contract of employment for a definite term which fixes the compensation, there cannot be any recovery for the reasonable value of the services even though the employer discharges the em-

ployee—repudiates the contract before the end of the term; that the only remedy of the employee is an action on the contract for the fixed compensation or damages for the breach of the contract. The trial court accepted that theory and rendered judgment for defendant because plaintiff did not state a cause of action on the contract nor for damages for its breach; it was for the reasonable value of the services performed before plaintiff's discharge. Accordingly there is no express finding on whether the discharge was wrongful or whether there was a rescission of the contract by plaintiff because of Campbell's breach of it, or whether plaintiff had substantially performed at the time of this discharge.

The rule applied is not in accord with the general contract law, the law applicable to employment contracts or employment of an attorney by a client. ■ The general rule is stated: ". . . that one who has been injured by a breach of contract has an election to pursue any of three remedies, to wit: 'He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.' " (*Alder* v. *Drudis*, 30 Cal.2d 372, 381 [182 P.2d 195]; see 12 Cal.Jur.2d, Contracts, § 253; Rest. Contracts, § 347.) It is the same in agency or contract for services cases. ■ "If the principal, in violation of the contract of employment, terminates or repudiates the employment, or the agent properly terminates it because of breach of contract by the principal, the agent is entitled at his election to receive either:

"(a) the amount of the net losses caused and gains prevented by the principal's breach or, if there are no such losses or gains, a small sum as nominal damages; or

"(b) the reasonable value of the services previously rendered the principal, not limited by the contract price, except that for services for which a price is apportioned by the terms of the contract he is entitled to receive the contract price and no more.

"*Comment:*

"*a.* In no event is the agent entitled to compensation for services unperformed. If, however, the principal terminates the relationship in breach of contract, or if the agent chooses

to terminate it because of a total breach by the principal, the agent is entitled, at his option, to affirm or disaffirm the contract. If he affirms the contract, he can maintain an action for its breach and recover damages in accordance with the rule stated in Clause (a). For a complete statement as to the amount of damages recoverable, if he chooses this alternative, see the Restatement of Contracts, §§ 326-346. The rule stated in Clause (b) is based upon the disaffirmance of the contract by the agent, and damages are given him by way of restitution. The Restatement of Contracts, § 347, states the consequences of disaffirmance and the non-availability of restitution as a remedy where part performance has been completed, for which compensation has been apportioned." (Rest. Agency, § 455.) "If the performance rendered consists of services, there cannot ordinarily, from the nature of legal remedies, be actual restitution, but it is possible to give the equivalent in value under a common count. Since money paid may be thus recovered and similarly in the United States in many instances, land, logic would require such a remedy; and it is allowed in part, but only in part. If the plaintiff has fully performed the contract, or a severable part thereof, and 'if the only part of the agreed exchange for such performance that has not been rendered by the defendant is a sum of money constituting a liquidated sum,' the only redress he has for breach of contract by the other side is damages for the breach. It is true that if the performance to which he is entitled in return is a liquidated sum of money, he may sue in *indebitatus assumpsit* and not on the special contract, but the measure of damages is what he ought to have received—not the value of what he has given. If, however, the plaintiff has only partly performed and has been excused from further performance by prevention or by the repudiation or abandonment of the contract by the defendant, he may recover, either in England or America, the value of the services rendered, though such a remedy is no more necessary than where he has fully performed, since in both cases alike the plaintiff has an effectual remedy in an action on the contract for damages. In some jurisdictions, if a price or rate of compensation is fixed by the contract, that is made the conclusive test of the value of the services rendered. More frequently, however, the plaintiff is allowed to recover the real value of the services though in excess of the contract price. The latter rule seems more in accordance with the theory on which the right of action must be based—

that the contract is treated as rescinded, and the plaintiff restored to his original position as nearly as possible.'' (Williston on Contracts (rev. ed.), § 1459.) (See *Haub* v. *Coustette*, 31 Cal.App. 424 [160 P. 836], contract price less reasonable value of work yet to be done allowed; *Blair* v. *Brownstone Oil & Refining Co.*, 35 Cal.App. 394 [170 P. 160], dictum; *Fatta* v. *Catalano*, 41 Cal.App. 630 [183 P. 224]; *Laiblin* v. *San Joaquin Agr. Corp.*, 60 Cal.App. 516 [213 P. 529]; Williston on Contracts (rev. ed.), §§ 1459, 1485; Corbin on Contracts, §§ 1104-1113; *Hart* v. *Buckley*, 164 Cal. 160 [128 P. 29]; *Davidson* v. *Laughlin*, 138 Cal. 320 [71 P. 345, 5 L.R.A. N.S. 579]; *Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376 [89 P. 86].) ▆ And in entire contracts employing an attorney for a fixed fee it has been said that when the client wrongfully discharges the attorney before he has completed the contract, the attorney may recover the reasonable value of the services performed to the time of discharge. (*Neblett* v. *Getty*, *supra*, 20 Cal.App.2d 65, dictum; *Lessing* v. *Gibbons*, 6 Cal.App.2d 598 [45 P.2d 258]; *McManus* v. *Montgomery*, 12 Cal.2d 397 [84 P.2d 787], dictum; *Echlin* v. *Superior Court*, 13 Cal.2d 368 [90 P.2d 63, 124 A.L.R. 719], dictum; *Kirk* v. *Culley*, 202 Cal. 501 [261 P. 994]; *Ayres* v. *Lipschutz*, 68 Cal.App. 134 [228 P. 720]; 109 A.L.R. 674.) Inasmuch as the contract has been repudiated by the employer before its term is up and after the employee has partly performed and the employee may treat the contract as ''rescinded,'' there is no longer any contract upon which the employer can rely as fixing conclusively the limit of the compensation—the reasonable value of services recoverable by the employee for his part performance. ▆ Hence it is stated in *Lessing* v. *Gibbons*, *supra*, 6 Cal.App.2d 598, 607, that: ''It is well settled that one who is wrongfully discharged and prevented from further performance of his contract may elect as a general rule to treat the contract as rescinded, may sue upon a *quantum meruit* as if the special contract of employment had never been made and may recover the reasonable value of the services performed even though such reasonable value exceeds the contract price.'' That statement is quoted with approval in *Neblett* v. *Getty*, *supra*, 20 Cal.App. 2d 65, 70 (dictum). The same is said in *Laiblin* v. *San Joaquin Agr. Corp.*, *supra*, 60 Cal.App. 516, quoting with approval from sections 1459, *supra*, and 1485 of Williston on Contracts. (See also *Adams* v. *Burbank*, 103 Cal. 646 [37 P. 640]; *Gray* v. *Bekins*, 186 Cal. 389 [199 P. 767]; *Tubbs*

v. *Delillo*, 19 Cal.App. 612 [127 P. 514]; 23 Cal.L.Rev. 313; 109 A.L.R. 674.)  Of course the contract price is competent evidence bearing on the reasonable value of the services. (*Adams* v. *Burbank, supra*, 103 Cal. 646; *Kimes* v. *Davidson Inv. Co.*, 101 Cal.App. 382 [281 P. 639]; Rest. Contracts, § 347, Com. d.)

It is true that in the Lessing case, *supra* (6 Cal.App.2d 598), the trial court found against an express contract of employment of the attorney fixing his compensation, but in affirming the judgment for reasonable value of the services the District Court of Appeal as one of its grounds, and in making the above quoted statement, assumed that there was an express contract fixing the fees. In *Elconin* v. *Yalen*, 208 Cal. 546 [282 P. 791], there was involved a case where the fees were not stated in the contract of employment and the court's statement that if there had been such a fixing it would have "measured" the amount of recovery, was dictum. It is not clear whether it was meant that such a contract would be only evidence of the amount or the conclusive measure. Moreover it cited for its dictum *Kirk* v. *Culley, supra*, 202 Cal. 501, and *Webb* v. *Trescony*, 76 Cal. 621 [18 P. 796], which merely held that where an attorney is wrongfully discharged under a partially performed contract he may sue for damages for the breach and in a proper case the full contract price may be the measure of damages. The same is true of *Denio* v. *City of Huntington Beach*, 22 Cal.2d 580 [140 P.2d 392, 149 A.L.R. 320], and *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler*, 12 Cal.2d 98 [81 P.2d 913].

[6] Inherent in the right to plead by common count in *quantum meruit* where the employee has partly performed but has been prevented from full performance by the employer's repudiation of the contract, is the principle that he need not plead the contract or its repudiation and his rescission of it. There are cases indicating that those special facts should be pleaded (see *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903]; 5 Cal.Jur.2d, Assumpsit, § 9; 14 So. Cal.L.Rev. 288) but the well established rule is that a common count declaration is sufficient under the circumstances above mentioned. (See authorities cited *supra*; 5 Cal.Jur.2d Assumpsit, §§ 10, 11, 12, 22, 25; 14 So.Cal.L.Rev. 288.)

[7] A common count may be used where the only thing that remains to be done is the payment of money. (*O'Connor* v. *Dingley*, 26 Cal. 11; *Castagnino* v. *Balletta*, 82 Cal. 250 [23 P. 127]; *Donegan* v. *Houston*, 5 Cal.App. 626 [90 P. 1073].)

In the instant case all that remained to be done by defendant was the payment of the amount still due on the contract as it became due by its terms after the trial of the divorce action.

It should further be noted that under the only evidence on the subject, above mentioned, plaintiff in effect promptly notified Campbell of the rescission of the contract when he advised him that he would execute the substitution of attorneys when he was discharged by Campbell but told Campbell he would hold him for the reasonable value of the services.

■ On the issue of the necessity of restoration or offer to restore the part payment for the services which Campbell had made, the rule applies that such restoration is not necessary where plaintiff would be entitled to it in any event. (See *Kales* v. *Houghton,* 190 Cal. 294 [212 P. 21]; *Silvey* v. *Fink,* 99 Cal.App. 528 [279 P. 202]; *Mitchell* v. *Samuels,* 39 Cal. App. 134 [178 P. 336]; *Sime* v. *Malouf,* 95 Cal.App.2d 82 [212 P.2d 946, 213 P.2d 788]; Rest. Contracts, § 349.) It is clear that plaintiff was entitled to receive the $450 paid to him either under the contract or for the reasonable value of his services.

The question remains, however, of the application of the foregoing rules to the instant case. Plaintiff had performed practically all of the services he was employed to perform when he was discharged. The trial was at an end. The court had indicated its intention to give judgment against Campbell and all that remained was the signing of findings and judgment. The full sum called for in the contract was payable because the trial had ended. ■ Under these circumstances it would appear that in effect, plaintiff had completed the performance of his services and the rule would apply that: ''The remedy of restitution in money is not available to one who has fully performed his part of a contract, if the only part of the agreed exchange for such performance that has not been rendered by the defendant is a sum of money constituting a liquidated debt; but full performance does not make restitution unavailable if any part of the consideration due from the defendant in return is something other than a liquidated debt.'' (Rest. Contracts, § 350; *Locke* v. *Duchesnay,* 84 Cal.App. 448 [258 P. 418]; *Willett & Burr* v. *Alpert,* 181 Cal. 652 [185 P. 976]; Williston on Contracts (rev.ed.), § 1459; Corbin on Contracts, § 1110; Civ. Code, § 3302.) In such cases he recovers the full contract price and no more. As we have seen, as far as pleading is concerned, however, the action may be stated as a common count other than a

declaration on the special contract. Here plaintiff alleged an indebtedness on defendant's part for services performed by plaintiff of a reasonable value of $10,000 of which only $450 had been paid. ■■■ While it may have been more appropriate for him to have alleged that the price of such services was the contract figure, any deficiency of the pleading is eliminated by defendant's answer setting forth that factor. Plaintiff's action can thus be said to be common count *indebitatus assumpsit*, and there being no dispute as to the amount called for in the contract, the services having been in effect fully performed, the court should have rendered judgment for the balance due on the contract which is conceded to be $300.

The judgment is therefore reversed and the trial court is directed to render judgment in favor of plaintiff for the sum of $300.

Shenk, Acting C. J., Traynor, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

SCHAUER, J.—I dissent. I agree with a great deal of the discussion in the majority opinion, and even to a larger extent with the authorities therein cited, relative to the rules of law which should govern this case but I think this court misapplies the very rules it cites.

Specifically, I think this court errs when it says "there being no dispute as to the amount called for in the contract, the services having been in effect fully performed, the court should have rendered judgment for the balance due on the contract which is conceded to be $300." The foregoing statement is neither supported factually by the record nor legally by the authorities cited.

Upon the record and the authorities the judgment should be reversed and the cause remanded either (a) with directions to the trial court to enter judgment for the plaintiff for $5,000 or (b) for a retrial upon all issues. I would prefer to end the litigation by adopting alternative (a) and in my view the record fully justifies that disposition of the cause. Directed to that conclusion is the succinctly stated opinion prepared by Justice Vallée when the cause was before the District Court of Appeal (reported at (Cal.App.) pp. 932-933, 265 P.2d) and I adopt it as a most worthy presentation of the views which I think should prevail:

"I am of the opinion that the judgment should be reversed with directions to the superior court to render judgment for plaintiff for $5,000. The court found that the reasonable value of the services performed by plaintiff is $5,000. Plaintiff was the only witness who testified concerning his discharge by Dr. Campbell. The opinion of this court fails to state all of the testimony of plaintiff with respect to his discharge. I set it forth *in toto* in the margin.[1] I think

---

[1] 'Q. Mr. Oliver, did you have any discussion with Dr. Campbell about that contract or as to the writing of that contract sometime after Judge Clark had announced his decision, and about the time that you had received the proposed findings of fact drawn by Mr. Shoemaker for Mrs. Campbell. . . .

" 'The Witness: I did not.

" 'By Mr. Neblett: [Attorney for plaintiff].

" 'Q. Did you have a discussion with Dr. Campbell about that time in your office? A. I did.

" 'Q. What was said? . . . A. Dr. Campbell came into my office and stated that he was dissatisfied with the announced judgment of the court. In his opinion, Mrs. Campbell should have been allowed nothing in way of alimony. I told Dr. Campbell that after 28 years of married life and with his property and his earning capacity that I thought the least the court would have allowed would have been possibly $250.00 a month.

" 'He also stated to me at that time that he was dissatisfied with the proposed amendments that I had prepared on the findings of fact and conclusions of law because he thought the findings should state in there that Mr. Shoemaker had suborned and bribed certain witnesses for the plaintiff.

" 'I told Dr. Campbell that there was no evidence of any such action on the part of Mr. Shoemaker and that I was not going to submit to the court any proposed findings in that regard.

" 'He stated at that time that if I wouldn't run this case the way he wanted it that he would discharge me, and asked me if I would sign a substitution of attorneys. I told him that I recognized that he had the power to discharge me as his attorney, that I was prepared to carry the case through to a conclusion, *and I thought the case would be reversed on appeal.* [Italics added.]

" 'He said "no," he wanted to act as his own attorney, so he could argue the proposed findings himself; and with that I prepared the substitution of attorneys which is in the file, and Dr. Campbell signed it and I signed it.

" 'He left the office carrying the files of this case, the divorce case, and also the file of the Municipal Court case with him, and that is the substance of the conversation.

" 'Q. You turned over to Dr. Campbell at that time all of the files in Campbell against Campbell? A. The two cases.

" 'Q. And the other case that is, the case in the Municipal Court? A. The entire file.

" 'Q. You have had nothing to do with the case from that time until now? A. I have not.

" 'Q. Mr. Oliver, will you look in the file of Campbell against Campbell, Number D370,670, and find the substitution to which you have just referred? A. Here it is.

" 'Q. This substitution which you have presented to me appears to have been signed by Dr. Campbell, January 25, 1951, and by John Oliver

no reasonable conclusion can be drawn from the evidence other than that the discharge amounts to a clear repudiation and abrogation of the contract in its entirety, in which case plaintiff is entitled to recover the reasonable value of the service performed. *The contract plaintiff made with Dr. Campbell did not limit his services to the trial of the case.*[2] (Italics added.] Under the contract he agreed to represent the doctor until final judgment, and he told the doctor that he *'thought the case would be reversed on appeal.'* [Italics added.] Manifestly, the evidence will be no different on a retrial. Dr. Campbell is dead. Plaintiff is the only witness who can

on account of Ralph D. Paonessa and John Oliver on the same day? A. That is correct.

" 'Q. That is Dr. Campbell's signature? A. That is Dr. Campbell's signature; he signed that in my presence; and that is my signature.

" 'Q. That reads: "Defendant and cross-complainant hereby substitutes himself Roy Campbell in *pro. per.* as his attorney of record in place of Ralph D. Paonessa and John Oliver,"

" 'and under that: "We consent to the above substitution, dated: January 25, 1951."

" 'Then on the other page there is another signature of Dr. Campbell above "substitution accepted." A. That is correct.

" 'Q. Did you have any conversation at that time with Dr. Campbell about compensation? A. Yes, I told him that I expected to be paid the reasonable value . . .

" '(Continuing) That I expected to be paid a reasonable value for my services. He says: ";What do you think the reasonable value of your services are?" I said, "I expect to be paid as much as Mr. Shoemaker." . . .

" 'Q. When you told Dr. Campbell that you expected to be paid and you expected to be paid approximately, or the same amount that was allowed Mr. Shoemaker what did Dr. Campbell say? A. He said, "I am not going to pay you a cent more." ' '"

" '[2] 'The contract reads:

"December 16th, 1949

" 'We, the undersigned do hereby agree to represent Roy Campbell in an action for separate maintenance instituted by his wife, Iva Lee Campbell and on cross-complaint for divorce filed by Roy Campbell against his wife, and which has been set for trial for February 20th, 1950 in Department 1 of the Superior Court of the County of Los Angeles State of California for a total fee of $750.00 plus Court Costs and other incidentals in the sum of $100.00 making a total sum of $850.00. Said fees of $750.00 to be paid after trial.

" 'Ralph D. Paonessa
" 'John Oliver

" 'I accept the services of Ralph D. Paonessa and John Oliver as per above agreement.

" 'RC' "

" '[3]The court fails to state that in questioning plaintiff, in addition to asking him with respect to the payments that had been made on account, defendant's attorney questioned him about his signature and that of Mr. Paonessa on the contract, and thus waived plaintiff's disqualification under section 1880 of the Code of Civil Procedure.

testify to the conversation. There is nothing in plaintiff's testimony to impugn his integrity. He did all any lawyer of the highest professional standards could have done under the conditions. Defendant waived plaintiff's disqualification under the dead man's statute.[3] (*Deacon* v. *Bryans,* 212 Cal. 87, 90-93 [298 P. 30].) Defendant will be unable to make any showing to the contrary of the testimony of plaintiff. Under these circumstances, the judgment should be reversed with directions as I have indicated. (*Conner* v. *Grosso,* 41 Cal.2d 229, 232 [259 P.2d 435].)''

Dooling, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.